966 So.2d 874 (2007)
Sheryl STEVISON, Appellant
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Appellee.
No. 2006-SA-00841-COA.
Court of Appeals of Mississippi.
October 16, 2007.
George S. Luter, attorney for appellant.
*875 Mary Margaret Bowers, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Sheryl Stevison appeals from the order of the Hinds County Circuit Court affirming the denial of disability benefits by the Public Employees' Retirement System (PERS). We find that the decision of PERS was not supported by substantial evidence and was arbitrary and capricious. Therefore, we reverse the judgment of the circuit court and remand for the award of disability benefits to Stevison.

FACTS
¶ 2. Stevison worked as a teacher's assistant with the Waynesboro Public School System for eleven and a half years. She resigned due to health problems on July 31, 2002, and, shortly thereafter, applied for non-duty-related disability benefits with PERS. The PERS Medical Board denied the claim. Stevison appealed to the Disability Appeals Committee, which heard testimony and reviewed medical records submitted by Stevison. The medical records indicated that, leading up to Stevison's termination of employment, she was treated for piriformis syndrome, fibromyalgia, depression, hypertension, Sjogren's syndrome, osteoarthritis, and chronic cystitis. She continued with treatment for these conditions after her resignation.
¶ 3. Stevison testified that, for the past six years of her career, she was the assistant for first-grade teacher Mary Ann Walker. Walker primarily taught at-risk, low-achieving children whose parents did not volunteer at the school, necessitating extra duties for the teacher's assistant. Stevison stated that her job required her to work one-on-one with the children, which obliged her to squat or sit down to be on their level. She assisted children needing special attention. She ran copies, cleaned the classroom, helped execute parties, and decorated the classroom bulletin boards, sometimes using a ladder. Stevison acted as the substitute teacher when Walker was absent, once for a six-week period. Additionally, Stevison worked with other teacher's assistants to plan the kindergarten graduation and to decorate the school and auditorium for Christmas. She did bus duty. She said she was very busy.
¶ 4. The medical records of Drs. M. Scott Tynes, Robert Daggett, David Weiss, Robert McCrary, the Hattiesburg Clinic, and miscellaneous office notes were admitted into evidence. Dr. Tynes was Stevison's family physician. In 1997, Dr. Tynes began treating Stevison for hypertension. Dr. Tynes's records from 1997 indicate that Stevison suffered from ongoing fatigue and stress at home. Dr. Tynes advised her to get counseling. In 1998, she saw Dr. Tynes for anxiety and insomnia. The records also indicated she experienced tachycardia which Dr. Tynes thought was anxiety-related. In 1999, Stevison had a complete hysterectomy for severe endometriosis and then began hormone replacement therapy. After the hysterectomy, Stevison developed chronic cystitis, for which she received ongoing treatment from Dr. Tynes and her gynecologist. In 1999, Dr. Tynes diagnosed Stevison with depression and she started antidepressant medication. In July 2002, he began treating her for Sjogren's syndrome, which causes dryness of the eyes, nose, and mouth.
¶ 5. Stevison testified that, on September 14, 2001, she developed pain in her left hip which she attributed to having lifted heavy textbooks the day before. The pain radiated from her left hip through her *876 buttocks and down her leg. In the next few days she went to a chiropractor, but the pain worsened. From then on, she went to different doctors trying to get a diagnosis. She stated that she saw fifteen or sixteen doctors before receiving a diagnosis of piriformis syndrome. Among those doctors was Dr. Beverley Myers, a rheumatologist at the Hattiesburg Clinic. On February 4, 2002, Dr. Myers indicated that Stevison had a normal MRI of her back and a normal EMG of her nerve conduction. Later, Stevison saw another rheumatologist, Dr. Weiss. On February 28, 2002, Dr. Weiss noted pain in the low back and hip and diagnosed her with left trochanteric bursitis. He prescribed injections which did not help the pain. Physical therapy was likewise unsuccessful. Dr. Weiss considered that the problem was fibromyalgia. Stevison said Dr. Weiss told her to go to pain management, but she refused because he had not definitively diagnosed her problem.
¶ 6. In April 2002, Stevison returned to Dr. Tynes, who felt that her pain was consistent with fibromyalgia with an outside chance of lupus due to a slight positive ANA. He referred her to a rheumatologist, Dr. Daggett, and in the meantime advised her to take time off work, to rest, and to use her pain medication. In April 2002, she saw Dr. McCrary for allergies and complained of pain all over her body. His impression was fibromyalgia. On May 13, 2002, Dr. Tynes noted that she had some domestic problems and seemed depressed. He advised her to get counseling for stress and anxiety, which she agreed to pursue. On June 3, 2002, Dr. Tynes stated that she was improved, but by July, her fibromyalgia pain "was acting up." On September 23, 2002, Dr. Daggett examined Stevison and noted that she had a good range of motion of all joints with minimal tenderness over the left greater trochanteric area. He found scattered fibrositic tender points. He diagnosed her with early fibromyalgia and with piriformis muscle spasm, which caused the radiating hip pain. He ordered a bone scan that indicated she had arthritis or degenerative changes in all major joints.
¶ 7. Stevison said that Dr. Daggett prescribed muscle relaxers, pain medication, and stretching exercises, which helped only minimally. She said she suffered from shooting pains down her lower back and down her left leg that Dr. Daggett said was caused by muscle compression pinching the sciatic nerve. Stevison related Dr. Daggett's opinion that she had caused permanent damage because she had not timely received a diagnosis of piriformis syndrome and that she would have to live with the pain. Stevison stated that she is in pain all over her body from the fibromyalgia and is never out of pain unless her pain medications knock her out. She said she has pain in her hands and feet that limits her activities. She cannot sit, squat, or stand for extended periods of time.
¶ 8. Stevison testified that, while she loved her job and tried her best, she could no longer do what was expected of her, such as lifting, going up and down ladders decorating, and helping the children. She said that she had hip pain whenever she did movements at work such as turning. She became agitated from pain during bus duty. Stevison testified that the assistant principal did not believe she was really having medical problems and refused to make any accommodations for her condition. Stevison testified that, at home, she has difficulty performing household tasks. She said she cannot bend over to do laundry. She stated that her daughters help her with housework and that she rests as needed. Stevison submitted a list of the medications she takes, including high blood pressure medicine, an anti-depressant, Salagen *877 for Sjogren's syndrome, Lortab for pain, Mobic for osteoarthritis, a muscle relaxer, antibiotics for cystitis, lubricating eye drops, and nose spray. She said that, throughout the summer of 2002, she tried to get well enough to go back to work, but was unsuccessful. She stated that she was sure the school would have extended her a contract for the next year had she not terminated. She was approved for Social Security disability benefits.
¶ 9. Walker testified that Stevison had loved her job and excelled, but became unable to do the job due to her health. Walker testified that she observed Stevison distracted by pain and unable to perform. She said that sometimes, during the school day, Stevison had to lay her head down and could not work. Walker said she tried to make accommodations for Stevison, but still there were times Stevison was unable to cope. In the employment questionnaire, Walker stated that Stevison missed one to two days per week. Regarding Stevison's ability to concentrate, Walker said Stevison had pain that caused noticeable tiredness and that she was unable to complete some duties. She said that Stevison's health problems significantly interfered with work tasks. Walker reported that the job required lots of walking and completing assignments on time, which Stevison was unable to do. She said she had observed Stevison's depression and her anxiety over no longer being able to do the job.
¶ 10. Doug Everett, the business manager for the Wayne County School District, filled out the "Employer's Certification of Job Requirements." Everett stated that the job required Stevison to continuously write, complete reports, or perform similar duties; to frequently walk, sit, stand, lift less than ten pounds, and bend at the waist; and to occasionally squat, kneel, lift over ten pounds, and use hands for repetitive motion. Everett stated that, in his opinion, Stevison could not perform the job. He indicated that Stevison had missed approximately forty-five days of work during the 2001-2002 school year.
¶ 11. In his statement of examining physician, Dr. Tynes stated that Stevison's primary diagnoses were Sjogren's syndrome, fibromyalgia, and piriformis syndrome with a secondary diagnosis of depression. He stated that she had a poor prognosis for recovery and was restricted to one to two hours of minimal physical activity per day. In a letter to PERS on January 30, 2003, Dr. Tynes stated that Stevison could not perform the teacher's assistant job due to her pain, fatigue, and significant depression. Dr. Tynes opined that her osteoarthritis was quite concerning as well due to the recent bone density scan.
¶ 12. PERS ordered a functional capacity evaluation (FCE) which was performed on March 13, 2003. The FCE noted her diagnoses of fibromyalgia, Sjogren's syndrome, and depression. The results of the FCE showed that Stevison could perform in the light demand category of work, meaning she could exert up to twenty pounds of force occasionally, up to ten pounds of force frequently, and use a negligible amount of force constantly to move objects. This category embraced the job of teacher's assistant. Stevison performed consistently during the evaluation with no indication of self-limiting behavior. However, throughout the FCE, Stevison reported severe aching pain. During the walking tolerance test, she reported a spasm in the left piriformis. She complained of severe shoulder pain during the lift test, but gave consistent effort. She had neck and shoulder pain with overhead activities. Stevison testified that she did her best on the FCE but was in so much *878 pain that it took three days of bed rest to recover from her exertions.
¶ 13. The Disability Appeals Committee found that Stevison had not provided any objective medical proof of disability and recommended that the claim be denied. The PERS Board of Trustees approved and adopted the recommendation. Stevison appealed, and the circuit court affirmed the denial of benefits.

LAW AND ANALYSIS
I. WHETHER THE DECISION OF PERS DENYING STEVISON'S DISABILITY RETIREMENT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 14. Stevison seeks disability benefits under Mississippi Code Annotated section 25-11-113(1)(a) (Rev.2006) which provides:
Upon the application of a member or his employer, any active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees . . . provided that the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired; however, the board of trustees may accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board. For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.
Stevison was not offered any other covered employment. Therefore, PERS had to determine whether Stevison was unable to perform the usual duties of employment due to mental or physical incapacity for the further performance of duty and whether such incapacity was likely to be permanent such that Stevison should be retired. Miss.Code Ann. § 25-11-113(1)(a). PERS determined that Stevison had not met her burden of proof of disability because she had provided no objective medical evidence in support of the claim.
¶ 15. This Court applies a limited standard of review to the decisions of administrative agencies. Pub. Employees' Ret. Sys. v. Ross, 829 So.2d 1238, 1240(¶ 11) (Miss.2002). We do not sit to re-weigh the evidence before the agency. Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 891(¶ 9) (Miss.2001). We will reverse only when the agency's decision was unsupported by substantial evidence, was arbitrary and capricious, was beyond the power of the agency to make, or violated some constitutional or statutory right of the complaining party. Id. at (¶ 8). "A rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action." Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 425(¶ 11) (Miss.2000).
¶ 16. Stevison argues that the decision of PERS was unsupported by substantial evidence and was arbitrary and capricious. "Substantial evidence has been defined as that which provides an *879 adequate basis of fact from which the fact in issue can be reasonably inferred." Dishmon, 797 So.2d at 892(¶ 13). To be substantial, the evidence must be something more than a mere scintilla or suspicion. Marquez, 774 So.2d at 425(¶ 13). And, "[i]f an agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." Id. at 430(¶ 35). "An administrative agency's decision is arbitrary if not done according to reason or judgment, but dependent on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." Mississippi State Dep't of Health v. Natchez, 743 So.2d 973, 977(¶ 13) (Miss.1999) (citations omitted).
¶ 17. PERS found that, while Stevison had provided opinions of disability from Drs. Daggett and Tynes, there was no objective basis for their opinions. PERS noted that her MRI and EMG studies were normal. Addressing Stevison's bone scan showing arthritis in every joint, PERS stated that
[g]eneral medical knowledge about arthritis is that it appears in one or more joints, usually bilaterally, but it would be quite unusual for all joints to light up with arthritis. Thus, a conclusion could be drawn, that the bone scan was inaccurate and therefore, unimpressive, especially in light of the fact that the MRI was normal.
PERS stated that there were no reports about Stevison's hip pain. It noted that "at least one provider documented that all of the complaints Ms. Stevison described had `hysterical overtones.'" PERS opined that Stevison's problems had a psychiatric component that was being overlooked, and that fibromyalgia has a psychiatric component that some believe causes the physical component. PERS thought Stevison was under-treated psychiatrically. PERS also stated:
Ms. Stevison, by her own testimony, saw many physicians and most of them could not find an objective reason to support her complaints of pain. We assume, for that reason, we were not provided the records from those physicians. May we assume that the other 10 plus doctors opined that no disability existed? It seems reasonable that we may.
PERS observed that Dr. Weiss had not made any disability determination but that, as Stevison's rheumatologist, he would have been expected to do so if any disability existed. Also, PERS noted the FCE results showing Stevison could perform in the light duty category. PERS found that "it appears that Ms. Stevison could perform her job, based upon the testing and the school administrators agreed she could do her job if there was going to be a continued offer of employment." PERS stated that there was "no objective proof of any physical or psychiatric disability." For that reason, it stated, it "assume[s] that Ms. Stevison's physicians were acting as advocates for their patient and there is certainly nothing wrong with that, but the proof for disability in this case is measured objectively and the record is void of same."
¶ 18. PERS rejected the evidence of the bone scan based upon its own general medical knowledge. In Flowers v. Public Employees' Retirement System, 952 So.2d 972, 980(¶ 26) (Miss.Ct.App.2006), we recognized that "part of the benefit of having physicians on the Disability Appeals Committee is so that they can analyze the medical claims." We held that "when a thorough set of findings and conclusions explain the expertise that those physicians applied, we find no fault in relying on such expertise." Id. Here, PERS explained *880 that the bone scan's finding of arthritis in every joint contravened general medical knowledge to the effect that it would be quite unusual for arthritis to appear in every joint. We find this explanation sufficiently thorough to support PERS's conclusion that the bone scan was inaccurate and thus did not support Stevison's diagnosis of osteoarthritis in every joint.
¶ 19. Since osteoarthritis was only one of Stevison's ailments, we look to the remaining evidence before the agency. This Court reviews the entire record to determine whether the agency's findings were supported by substantial evidence. Pub. Employees' Ret. Sys. v. Ross, 829 So.2d 1238, 1240(¶ 11) (Miss.2002). We begin by noting that we have combed the record before PERS and have found no statement by anyone that Stevison's complaints had "hysterical overtones." In fact, no medical professional expressed any doubts about the legitimacy of Stevison's complaints of pain. Contrary to the finding of PERS, Stevison did submit the opinion of her treating rheumatologist, Dr. Daggett, that she suffered from piriformis syndrome and fibromyalgia. She was receiving treatment for these conditions from Drs. Daggett and her primary care doctor, Dr. Tynes. Dr. Tynes was also treating her for depression. Dr. Tynes opined that, due to her pain, fatigue, and significant depression, Stevison was disabled from performing the job of teacher's assistant. No conflicting medical opinions appear in the record. The opinions of Drs. Tynes and Daggett tended to corroborate Stevison's experience of severe pain while performing the FCE.
¶ 20. In its opinion, PERS expressed no doubt about the credibility of Stevison's testimony about her symptoms. Rather, the basis for PERS's determination of no disability appears to have been that Drs. Tynes's and Daggett's diagnoses were based upon Stevison's subjective complaints, not upon objective medical testing. Because there was no credible, objective test that supported Stevison's subjective complaints, PERS concluded that Drs. Tynes's and Daggett's diagnoses of disabling conditions constituted patient advocacy, not legitimate medical diagnoses. PERS also decided, because Stevison had failed to submit the medical records of all the doctors she saw, that those doctors had opined she was not disabled. However, PERS never requested those records.
¶ 21. PERS argues that the lack of evidence at the agency level became the substantial evidence upon which its decision was based. See Pub. Employees' Ret. Sys. v. Cobb, 839 So.2d 605, 610(¶ 16) (Miss.Ct.App.2003). Indeed, in Cobb, we stated that we will affirm PERS's denial of disability benefits upon "a determination that the agency's conclusion that the evidence was so lacking or so unpersuasive that [the claimant] failed to meet her burden appears a reasoned and unbiased evaluation of the evidence in the record." Id. at 609(¶ 16). We held that the record, which lacked any medical diagnosis attributing Cobb's recurrent dizziness and other problems to an actual medical condition, "amply support[ed] the Board's findings that Cobb failed to meet her burden of showing her eligibility for disability retirement." Id. at 610(¶ 16).
¶ 22. In contrast with the record in Cobb, this record, in addition to Stevison's subjective complaints, contains uncontradicted medical diagnoses of fibromyalgia, piriformis syndrome, Sjogren's syndrome, and depression and Dr. Tynes's uncontradicted opinion that Stevison is disabled from working at her former job as a result of these four conditions. Despite this medical evidence, PERS denied the disability claim because it found Stevison had put forth no objective evidence of disability. *881 The medical evidence in this case, along with PERS's rationale for its decision, bears similarity to several cases involving claims of disabling fibromyalgia or chronic fatigue syndrome. In Marquez, PERS denied benefits though the claimant presented medical evidence of numerous medical problems, including fibromyalgia, that suggested she could not perform the usual duties of her job as a school teacher. Marquez, 774 So.2d at 427(¶ 23). PERS denied benefits in part because there was a lack of objective medical evidence and Marquez's more recent medical problems were based on her subjective complaints. Id. at 426(¶ 16). Regarding PERS's rationale for the denial, the supreme court stated: "[i]f medical diagnoses by licensed physicians are to be labeled `subjective' evidence of medical ailments, it is unclear what PERS would consider to be `objective' evidence." Id. at 427(¶ 22).
¶ 23. In Public Employees' Retirement System v. Dearman, 846 So.2d 1014, 1019(¶ 15) (Miss.2003), the supreme court affirmed the reversal of PERS's denial of benefits to a claimant who suffered from fibromyalgia, chronic fatigue syndrome, and other ailments. Dearman's primary treating physician had submitted a report stating that Dearman's medical conditions rendered her permanently disabled. Id. at 1016(¶ 3). The employer certified that Dearman was unable to perform the duties of her job and that no accommodations could be made to enable her to work. Id. The supreme court noted that the record was devoid of any evidence that Dearman was not disabled and that PERS did not order an independent medical examination of Dearman. Id. at 1018(¶ 11). The court held that, due to the uncontradicted evidence before the agency, its denial of benefits was arbitrary and capricious. Id. at 1019(¶ 14). The court stated "PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation. . . ." Id. at 1018(¶ 11).
¶ 24. This Court found that PERS's denial of benefits to a fibromyalgia sufferer was arbitrary and capricious in Public Employees' Retirement System v. Waid, 823 So.2d 595, 597(¶ 7) (Miss.Ct.App.2002). Waid's doctors diagnosed her with fibromyalgia, anxiety-depression, and HH & GERD and indicated that Waid was permanently disabled by these ailments due to chronic pain. Id. at 598(¶ 10). Everyone who testified at the hearing stated that Waid was unable to work due to her pain and that she had missed substantial time at work. Id. at (¶ 11). There was no medical evidence contradicting the opinions of Waid's doctors. Id. The PERS order made no specific findings of fact, but indicated PERS denied the claim because "the medical documentation submitted in support of Waid's claim shows that Waid's complaints are subjective and that physicians are unable to find an objective basis for her complaints." Id. at 597(¶¶ 5, 7). This Court reversed because the record substantially reflected that Waid was unable to perform the usual duties of her employment. Id. at 598(¶ 9).
¶ 25. The record in this case mirrors that in Waid. Stevison submitted uncontradicted medical opinions that she suffered from fibromyalgia, piriformis syndrome, Sjogren's syndrome, and depression, and that she could not perform the usual duties of her employment due to these conditions. Stevison's employer stated that she was unable to perform the duties of her employment. This was corroborated by Stevison's direct supervisor, Walker. The FCE showed that Stevison could perform in the light duty category but not without severe pain. In contrast, no record evidence tended *882 to show that Stevison could perform the usual duties of her employment. As in Waid, the evidence of disability was substantial and uncontradicted by other record evidence. PERS determined that Stevison had failed to prove her claim with objective medical evidence and, therefore, her physician's opinions were nothing more than patient advocacy. Yet, the supreme court has held that medical diagnoses by licensed physicians are objective, not subjective, evidence of disability. Marquez, 774 So.2d at 427(¶ 22). In support of the denial of benefits, PERS expressed its belief that Stevison's fibromyalgia had an unexplored psychiatric component. However, PERS never exercised its option to order an independent medical evaluation of Stevison to confirm or refute its belief. Miss.Code Ann. § 25-11-113(1)(e) (Rev.2006). We observe that section 25-11-113(1)(a) provides for the payment of disability benefits to an employee who is mentally or physically incapacitated for the further performance of duty. Therefore, Stevison would have been entitled to benefits even if her disabling fibromyalgia had a psychiatric component.
¶ 26. PERS also based its decision on its assumption that, because Stevison had not submitted medical records from all her physicians, those physicians had opined she was not disabled. PERS possesses the authority to order additional medical records. Miss.Code Ann. § 25-11-113(1)(e). If PERS requests medical records and the claimant refuses the request, then "the application shall be considered void." Id. To prevail in her claim, Stevison was not statutorily required to produce all of her medical records, but only to produce sufficient evidence to support the claim of inability to perform the usual duties of her employment. Stevison supplied medical records from four physicians and the Hattiesburg Clinic in an effort to meet this burden. PERS never requested additional medical records.
¶ 27. We observe that Stevison was not represented by counsel at the hearing before the Disability Appeals Committee. It is easily conceivable that Stevison did not submit all her medical records in an effort to conserve financial resources. Under section 25-11-113(1)(3), it is only when the claimant refuses a request by PERS for additional medical records that adverse action will be taken. PERS never requested the missing records in this case. Our courts have recognized on numerous occasions that PERS is required to base its decision upon evidence in the record before the agency. Miss.Code Ann. § 25-11-120(1) (Rev.2006) (stating "the board shall receive the record and make its determination based solely on matters contained therein"); Byrd v. Pub. Employees' Ret. Sys., 774 So.2d 434, 439(¶ 21) (Miss. 2000); Pub. Employees' Ret. Sys. v. Thomas, 809 So.2d 690, 694(¶ 14) (Miss.Ct.App. 2001). PERS had the ability to populate the record with the information needed to render its decision, yet it chose to forego this option. PERS instead decided to assume the missing information contained opinions of no disability. Thus, it manufactured evidence adverse to Stevison. This was impermissible in light of PERS's ability to obtain the records and the requirement that PERS base its decision on record evidence. We hold that, when PERS foregoes its option to order additional medical records, it cannot assume the missing records contained opinions of no disability.
¶ 28. We find that, due to the substantial, uncontradicted evidence of disability before the agency, PERS's determination that Stevison failed to meet her burden was not a reasoned and unbiased evaluation *883 of the record evidence. The denial of disability benefits lacked the support of substantial evidence and was arbitrary and capricious. Therefore, we reverse and remand this case for the award of disability benefits to Stevison.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING AND ISHEE, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. ROBERTS AND CARLTON, JJ., NOT PARTICIPATING.
GRIFFIS, J., dissenting:
¶ 30. I respectfully disagree with the majority. In my opinion, the majority errs by reweighing the evidence and substituting its judgment for that of PERS. I am of the opinion that the PERS finding was based on substantial evidence.
¶ 31. In Pub. Employees' Ret. Sys. v. Cobb, 839 So.2d 605, 609(¶ 12) (Miss.Ct. App.2003), a unanimous Court of Appeals held:
In administrative matters, the agency, and not the reviewing court, sits as finder of fact. Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1296 (Miss. 1990). That fact-finding duty includes assessing the credibility of witnesses and determining the proper weight to give to a particular witness's testimony. Walker Mfg. Co. v. Butler, 740 So.2d 315(¶ 46) (Miss.Ct.App.1998). A reviewing court is obligated to afford such determinations of credibility in the fact-finding process substantial deference when reviewing an administrative determination on appeal and the court exceeds its authority when it proceeds to re-evaluate the evidence and makes its own determination of the trustworthiness of some particular testimony. Smith v. Jackson Const. Co., 607 So.2d 1119, 1123-24 (Miss.1992).
¶ 32. The evidence indicates that PERS properly considered the testimony and medical documentation. PERS specifically noted the following facts:
Disability is defined as the medical incapacity for further performance of duty that is likely to be permanent and the employee should be retired. See Mississippi Code Ann. Section 25-11-113 (1972, as amended); see, also, Regulation 45A, PERS Board of Trustees, Administration of PERS Disability Benefits. Ms. Stevison has the burden of persuading this Committee by objective medical evidence that she is disabled as defined in this matter.
Has Ms. Stevison provided objective medical proof that she is disabled? She has provided us with opinions of disability from Dr. Daggett and Dr. Tynes. But what are the objective bases for these opinions, as medical doctors are typically not aware of the specifics required by statute, to make a determination of disability. We know that Ms. Stevison developed problems in September of 2001, after lifting textbooks. Her left hip developed a pain that she described as like lightening. She saw 15-16 doctors without relief. She had tests performed, including MRIs and EMG studies that were completely normal. Subsequently, she had a bone scan that showed every single joint had arthritis. This is very odd. Surprisingly, the MRI picked up none of the arthritis. General medical knowledge about arthritis is that it appears in one or more joints, *884 usually bilaterally, but it would be quite unusual for all joints to light up with arthritis. Thus, a conclusion could be drawn, that the bone scan was inaccurate and therefore, unimpressive, especially in light of the fact that the MRI was normal.
In addition, we have no reports about the hip pain, which according to Ms. Stevison, is how all of this began anyway. The electric-like pain that Ms. Stevison complains of is probably related to muscles and tendons and not hard structures like bones, joints, and discs. We note that at least one provider documented that all of the complaints Ms. Stevison described had "hysterical overtones". This Committee noted, as did the Rheumatolgist [sic], that Ms. Stevison's sedimentation (SED) rate was slightly elevated, but okay. It certainly was not high.
Obviously, the opinions regarding inability to work are not supported by the records presented to us today. This point is evident not just through the medical records but also through what is not included in the record. Ms. Stevison, by her own testimony, saw many physicians and most of them could not find an objective reason to support her complaints of pain. We assume, for that reason, we were not provided the records from those physicians. May we assume that the other 10 plus doctors opined that no disability existed? It seems reasonable that we may. Only Dr. Daggett and Dr. Tynes find disability. The records from the Rheumatologist, which seem to be the area of diagnosis, make no determination regarding disability. If Ms. Stevison is disabled as a result of Fibromyalgia and the associated syndromes, wouldn't it seem logical that the Rheumatologist would render an opinion about this? We believe that Dr. Weiss, the Rheumatologist, would have been in the best position to render an opinion of disability. He did not. Furthermore, it seems to this Committee that a major component is being overlooked, and that is the psychiatric component. This woman should have been evaluated for psychiatric care. Again, general knowledge is that fibromyalgia has a psychiatric component and some believe that the psychiatric component results in the physical component. Definitely, Ms. Stevison has been under treated in this area. As referred to earlier, other doctors noted "hysterical overtones."
Lastly, we must consider how the Functional Capacity Evaluation plays into this claim. The conclusions drawn from that evaluation are that Ms. Stevison is physically able to perform her job. Also to consider along those lines is that Ms. Stevison testified that she probably would have been offered a contract for the following school year. In addition, of course, we have Ms. Walker who testified that Ms. Stevison looked ill to her. Objectively, it appears that Ms. Stevison could perform her job, based upon the testing and the school administrators agreed she could do her job if there was going to be a continued offering of employment. Ms. Walker had no way to objectively measure whether Ms. Stevison was ill. She merely was able to tell this Committee that Ms. Stevison looked ill.
These cases are always difficult, but the statute is clear that objective evidence is what is required to prove disability in this forum. We have considered the opinions of the two physicians stating that Ms. Stevison is disabled, and maybe she is for Social Security purposes, but she does not have objective medical proof of same. This Committee has made a diligent search of this record looking for evidence to support Ms. Stevison's claim of disability and it is *885 just not here. We have to assume that Ms. Stevison's physicians were acting as advocates for their patient and there is certainly nothing wrong with that, but the proof for disability is [sic] this case is measured objectively and the record is void of same.
We believe that Ms. Stevison loved her job and maybe when her father passed on she began needing some counseling. We certainly do not believe that some type of psychiatric evaluation would be detrimental in this matter, but a decision like that is solely up to Ms. Stevison. Nevertheless, we have no objective proof of any physical or psychiatric disability and since that is the case; we recommend that Ms. Stevison's request for disability benefits be denied.
¶ 33. I am of the opinion that PERS, through its medical doctors, was in a far better position to evaluate Stevison's medical history and the evidence presented. PERS's decision was based on its review of the evidence, and its physicians' medical knowledge and expertise. This Court is required to give deference to the PERS decision.[1] We cannot substitute our judgment, and we must not reweigh the facts. Howard, 905 So.2d at 1284(¶ 15). I respectfully dissent from the majority's decision to reverse the circuit court. I would affirm the circuit court.
NOTES
[1] In Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1287-88(¶ 23) (Miss.2005), the Mississippi Supreme Court held:

The Medical Board which denied Howard's claim was made up of three physicians. The Appeals Committee which agreed with that determination included two physicians. Sorting through voluminous and contradictory medical records, then determinating whether an individual is permanently disabled is better left to physicians, not judges. This is the idea behind the creation and expansion of administrative agencies. "The existence within government of discrete areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise is the raison d'etre of the administrative agency." McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 323 (Miss. 1992). "Because of their expertise and the faith we vest in it, we limit our scope of judicial review." Id.