# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-SA-00037-COA

**KRISTI DEARMAN**                                                                 **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                         **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIBUNAL DISPOSITION: | DENIED APPELLANT'S NON-DUTY RELATED DISABILITY CLAIM |
| DISPOSITION: | AFFIRMED: 12/13/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., ISHEE AND FAIR, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Kristi Dearman was a guidance counselor for Stone County Schools. She had eleven years of service credit before the nonrenewal of her contract, effective July 30, 2013. Dearman applied for Public Employees' Retirement System (PERS) non-duty related disability benefits. The PERS Disability Appeals Committee (Committee) held a hearing and recommended denying Dearman's claim. After review, the PERS Board of Trustees (Board) agreed with the Committee's recommendation. Dearman appealed to the Hinds County Circuit Court, which affirmed the Board.

¶2.    Dearman has appealed to this Court, asserting the following: (1) the Board's decision was not supported by substantial evidence; and (2) the Committee failed to obtain necessary medical records before denying her claim.  We find the Board was well within its discretion in denying Dearman's claim.  Therefore, we affirm the judgment of the circuit court.

**FACTS**

¶3.    Dearman worked ten years at Stone Middle School in the special-education department.  The last year of her employment, she was reassigned as the guidance counselor at Stone Elementary School.  During school district elections, Dearman stated that she did not support the incumbent superintendent of education in his reelection campaign and instead campaigned for another candidate (who later lost).

¶4.    Dearman last worked in February 2013 when the administration sent her home after she violated the Family Educational Rights and Privacy Act, which protects the privacy of student education records. Dearman said this stemmed from her helping a new special-education instructor (the same person she supported in the election for superintendent) with paperwork. She was paid through the end of the school year, but her employment contract was not renewed for the following school year.  Her application for PERS disability benefits was filed June 24, 2013, shortly before her contract ended on July 30, 2013.

¶5.    Dearman appeared before the Committee pro se.  She stated that she did not terminate her job voluntarily, and thought the nonrenewal of her contract was political retaliation.  She also never requested a medical leave of absence.  Instead, she drew unemployment from

2

August 2013 through February 2014, and did not look for employment because she could not figure out how to explain why she had lost her teaching contract. She also applied for Social Security disability but was denied.

¶6. At the time of her termination, Dearman's job as guidance counselor involved working with the elementary parents, students, and teachers. Usually the students saw Dearman in her office, but she was in the classroom thirty percent of the time. Dearman said her job entailed a lot of computer work and sitting, which became difficult. She also said her job involved a lot of filing, which aggravated her joints.

¶7. Sometime prior to her transfer to the elementary school, Dearman developed bilateral rotator cuff tears. She had her left shoulder repaired, and she returned to work in November 2012, right around the time of the campaign. She also had a prior left carpal tunnel release and bilateral tennis elbow release. As the only guidance counselor at the elementary school, Dearman said the paperwork required by her job was enormous. She stated at the hearing that the paperwork contributed to an increase in her right carpal tunnel hand pain. And while she had the problem surgically repaired, she claimed to have permanent damage to the right wrist because she waited too long. In late 2012 and early 2013, Dearman was able to work with pain medications. She has been on narcotic medication since November 2012.

¶8. After continued shoulder pain, Dearman's orthopedic doctor referred her to a rheumatologist, who diagnosed her with rheumatoid arthritis. She also had a number of steroid injections in her elbows. Dearman stated that, due to her injuries, she had trouble

3

sitting and could not drive because the pain medication made her drowsy.

¶9. At time of the hearing, Dearman testified that she was seeing a psychologist, who diagnosed her with post-traumatic stress disorder (PTSD) from losing her job. Dearman's sister accompanied her to the hearing and testified that she personally took Dearman to see a psychologist and a psychiatrist the week before the hearing. According to her, both doctors diagnosed Dearman with severe PTSD.

## STANDARD OF REVIEW

¶10. The standard of review on appeal from an administrative decision of the Board is limited to a determination of whether the Board's decision: (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the authority of the Board to make; or (4) violated a statutory or constitutional right of the claimant. *Pub. Emps' Ret. Sys. v. Walker*, 126 So. 3d 892, 894-95 (¶5) (Miss. 2013). An appellate court is not entitled to substitute its own judgment for that of PERS or reweigh the facts of the case. *Id*. at 895 (¶5). "A rebuttable presumption exists in favor of PERS's decision, and [Dearman] is left with the burden of proving the contrary." *Brinston v. Pub Emps' Ret. Sys*., 706 So. 2d 258, 259 (¶5) (Miss. Ct. App. 1998) (citing *Miss. Comm'n on Envtl. Quality v. Chickasaw Cty. Bd. of Sup'rs*, 621 So. 2d 1211, 1215 (Miss. 1993).

## DISCUSSION

¶11. Mississippi Code Annotated section 25-11-113(1)(a) (Rev. 2010) lays out specific requirements to prove a PERS disability:

4

[A]ny active member in . . . state service who has at least four (4) years of membership service credit may be retired by the [b]oard of [t]rustees . . . provided the [m]edical [b]oard, after an evaluation of medical evidence . . . certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.

Disability is defined in the same code section as the following:

[T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform he duties of any employment covered by the Public Employees' Retirement System ([s]ection 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.

*Id*.

## 1. The Board's Denial of Dearman's Claim

¶12. To establish her claim, Dearman was required to produce medical evidence that, as of the date her contract ended, she was likely to be permanently occupationally disabled due to her medical conditions. Miss. Code Ann. § 25-11-113(1)(b) (Rev. 2010).

¶13. Dr. R. Lance Johansen, an orthopedist, saw Dearman on June 17, 2013, following arthroscopic surgery of the left shoulder. Dearman complained of right shoulder pain, tingling, and weakness with a cortisone injection in both shoulders two weeks prior. An MRI of her right shoulder showed a full-thickness rotator cuff tear. After a physical exam, Dr. Johansen diagnosed Dearman with right shoulder bursitis, impingement, rotator cuff tear, and right carpal tunnel syndrome. He recommended an arthroscopy of the right shoulder followed by a right carpal tunnel release. Dearman immediately had the right rotator cuff

5

tear repaired, with the Dr. Johansen writing that he accomplished an "excellent decompression."

¶14. Dr. Johansen completed a PERS DSBL 7, a "statement of examining physician" form, dated July 18, 2013, writing that Dearman had a repaired right rotator cuff tear and osteophytosis of the right shoulder, with a good prognosis. At that time she had limited range of motion due to the surgery a month prior, but she was attending physical therapy. He noted that she did not have any permanent impairment. She was not yet at maximum medical improvement (MMI), and he did not want her to return to work until she was medically cleared. On August 1, 2013, Dearman returned to Dr. Johansen's office complaining of multiple joint pain. He referred Dearman to rheumatologist Dr. Crisotomo Baliog.

¶15. Dearman submitted a letter from Dr. Baliog dated April 29, 2014, indicating that he had treated Dearman for rheumatoid arthritis. He stated that they were in the process of controlling her symptoms with a steroid sparing agent, but that it may take time to find the best medications for her. Dr. Baliog thought Dearman could return to her usual baseline level of activity when he figured out a satisfactory medication regimen. No medical records accompanied Dr. Baliog's letter.

¶16. Dr. Shawn Mei of Gulf Coast Interventional Medicine was Dearman's pain-management doctor. He also completed a PERS DSBL 7, dated July 26, 2013, but no medical records were attached. Dr. Mei noted that Dearman had bilateral osteoarthritis, moderate on the left and severe on the right. She was not at MMI but would likely have

improvement from physical therapy. He marked that she had no permanent partial impairments, but that she should avoid heavy lifting. Dearman presented a letter signed by Dr. Mei, dated May 9, 2014, addressed "to whom it may concern." Dr. Mei stated that Dearman had received significant pain relief in her shoulder area following surgery, but recently her lower back pain with radiculitic symptom had gotten worse, and that she had developed anxiety. He recommended she consult a pain psychologist.

¶17. Dr. Calvin Washington, Dearman's pain psychologist, submitted a PERS DSBL 7, dated September 25, 2013, without office notes or medical records. Dr. Washington wrote that Dearman had depression and anxiety, both moderate, noting she was referred to psychiatry for treatment and that while she was not at MMI, she had no impairment, limitations, or restrictions.

¶18. In December 2013, PERS had requested Dearman be sent for an independent medical examination performed by Dr. Angel Mister. Her report was admitted into evidence. In preparation for the exam, Dr. Mister reviewed Dearman's file and performed her own physical examination. She noted Dr. Johansen's restriction of "no heavy lifting" and mentioned that Dearman's job did not require heavy lifting. Based on Dearman's history and her examination, and in conjunction with the review of medical evidence and job requirements, Dr. Mister opined that Dearman had multiple joint pain, depression, and anxiety, but they could be managed with appropriate treatment. Dr. Mister wrote that she did not believe Dearman's medical problems met the criteria for permanent disability.

¶19. Dearman failed to present any medical evidence showing she likely suffered a permanent disability, as required by section 25-11-113(1)(a). Thus, we find the Board's decision was supported by substantial evidence and was not arbitrary or capricious.

### 2. Dearman's Unobtained Medical Records

¶20. "In case of disability appeals, the hearing officer shall have the authority to defer a decision in order to request a medical evaluation or test or additional existing medical records not previously furnished by the claimant." Miss. Code Ann. § 25-11-120(1) (Rev. 2010). Dearman cites *Stevison v. Public Employees' Retirement System*, 966 So. 2d 874 (Miss. Ct. App. 2007), for her argument that the Committee erred in failing to request additional medical records before denying her claim.

¶21. In *Stevison*, a physician stated the claimant had permanent damage because she had not timely received the proper diagnosis. *Id.* at 876 (¶7). Without requesting additional medical records, the Committee held the claimant had not meet her burden of proof because she provided no objective medical records in support of her claim. *Id*. at 878 (¶14). On appeal, this Court held that because medical testimony had shown the claimant likely suffered permanent damage, the Committee erred in failing to request additional medical records. *Id*. at 881-82 (¶¶24-27).

¶22. The present case is distinguishable from *Stevison*. No physician stated that Dearman was permanently disabled. The Committee pointed out that Dearman "produced almost no objective medical evidence regarding her physical and or psychological condition," and what

she did produce did not support a finding of permanent disability. The Committee also pointed out that neither Dr. Baliog nor Dr. Mei's letters concluded that she was permanently disabled. We find no error in the Committee's decision not to request any additional medical records.

¶23. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., NOT PARTICIPATING.**