# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-SA-00375-COA

**BOBBIE THOMAS**                                          **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                    **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2021 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: AMELIA BARTLETT GAMBLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/06/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., McDONALD AND SMITH, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.    While working as a bus aide for Jackson Public Schools (JPS), Bobbie Thomas fell and hit her head. Thomas applied for duty-related disability benefits based on injuries she allegedly sustained as a result of her fall, but the Board of Trustees (Board) of the Public Employees' Retirement System of Mississippi (PERS) found that Thomas failed to meet her burden to prove that she could no longer perform her duties as a bus aide as a result of the workplace accident. Accordingly, the Board denied Thomas's application. The Hinds County Circuit Court subsequently affirmed the Board's decision. We likewise conclude that the Board's decision is supported by substantial evidence and is not arbitrary or capricious.

Therefore, we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.    Thomas was employed as a bus aide for JPS. Her job required her to monitor and assist student bus riders with special needs. In September 2014, Thomas noticed that a student had unfastened his seatbelt and left his seat. As Thomas tried to assist the student, the bus made a sudden turn, and Thomas fell down and hit her head on a wheelchair lift. Thomas was taken to the emergency room at St. Dominic Hospital.

¶3.    Tests conducted at St. Dominic, including CT scans of Thomas's head and back and an MRI of her brain, showed no significant injury, and Thomas was discharged the same day. Thomas returned to the hospital one week later complaining of headaches and neck pain. An MRI of her brain and other tests were performed and again revealed no significant injury. Thomas was again discharged from the hospital shortly after her doctors reviewed her test results.

¶4.    In May 2016, Thomas applied for PERS duty-related disability benefits based on the September 2014 incident.[1] Thomas stated that she could not return to work after the incident because she was experiencing headaches, dizziness, and balance issues and "seeing stars."

¶5.    Dr. Jimmy Wolfe had treated Thomas and completed a PERS Form DSBL 7

---

[1] Thomas is not eligible for non-duty-related disability benefits because she was hired by JPS and became a PERS member on July 25, 2007, and has accrued only 7.5 years of PERS service. *See* Miss. Code Ann. § 25-11-113(1)(a) & (c) (Supp. 2011). Thomas previously worked for the Department of Corrections for approximately fourteen years; however, after Thomas's employment with the Department of Corrections ended, she apparently withdrew her contributions from PERS, thereby waiving her accrued years of service. *See* Miss. Code Ann. § 25-11-117(1) (Rev. 2018).

(Statement of Examining Physician). Dr. Wolfe diagnosed Thomas with migraine variant and post-concussive syndrome. Dr. Wolfe found that Thomas's diagnoses were unlikely to improve and noted that Thomas had trouble staying focused on a task and tended to focus on pain. Dr. Wolfe indicated that Thomas had no restrictions from a neurological standpoint.

¶6. Dr. Edward Manning, a psychologist, evaluated Thomas and recommended "ongoing medical care for headaches." Dr. Manning also suggested "psychological treatment in the form of cognitive-behavior therapy that focuses on pain management [to] address[] [Thomas's] very poor psychological/behavior adaptation to her condition."

¶7. The PERS Medical Board deferred action on Thomas's application and asked Thomas to submit to independent medical examinations by Dr. Criss Lott, a clinical and forensic psychologist, and Dr. Philip Blount, a physiatrist. Dr. Lott concluded that Thomas "appeared to be grossly exaggerating her cognitive and psychological problems." Dr. Lott stated that he could not give an opinion regarding Thomas's functional capacity or prognosis due to a "lack of credible data obtained during [the] evaluation." However, Dr. Lott stated that "Thomas's psychological problems [were] amenable to treatment," although she had not yet received any treatment.

¶8. Dr. Blount found that Thomas had a normal neurologic exam with respect to strength, sensation, and reflexes. Dr. Blount concluded that Thomas did not have any restrictions or limitations from a cervical, lumbar, or musculoskeletal perspective. Dr. Blount noted that Thomas had preexisting low back pain and that it was "clear" that those "symptoms ha[d] not changed in quality or intensity since her [workplace] injury." Dr. Blount stated that with

3

respect to any diagnosis of a post-concussive syndrome or mental health issues, he would defer to a neurologist and psychologist, respectively.

¶9. After reviewing Dr. Lott's report, the Medical Board asked Dr. Lott to clarify whether he believed that Thomas was disabled. In response, Dr. Lott stated that he could not "offer an opinion with confidence regarding the actual nature and severity of [Thomas's] reported cognitive and emotional problems." He reiterated that Thomas was "grossly exaggerating her cognitive and psychological problems" during his independent medical examination. He further stated that "Thomas's psychological problems [were] amenable to treatment" and that her "condition could improve with appropriate mental health treatment."

¶10. In February 2017, the Medical Board denied Thomas's application for duty-related disability benefits. The Medical Board found that Thomas produced "insufficient objective medical evidence to support the claim that [her] medical condition prevent[ed] [her] from performing the duties of a Bus Aide."

¶11. Thomas appealed the Medical Board's denial to the PERS Disability Appeals Committee. In September 2017, the Appeals Committee held a hearing regarding Thomas's appeal. Thomas testified that she was unable to return to work after the incident because she was experiencing headaches, dizziness, and balance issues and "seeing stars." She testified that she was concerned that she would lose her balance while on the bus and hurt herself or a student. She said she sometimes had trouble with her balance while sitting or standing, although she had never fallen down. She also testified that her headaches produced "such a sharp, intense pain that [she could not] do anything." Thomas stated that she experienced

4

headaches on a daily basis and that they struck her suddenly and sometimes lasted for three to four hours.

¶12. The Appeals Committee subsequently issued a thirteen-page proposed opinion that recommended that the PERS Board of Trustees deny Thomas's claim. Like the Medical Board, the Appeals Committee found that Thomas presented insufficient objective medical evidence to establish that she was unable to perform her duties as a bus aide as a result of the September 2014 incident. The Board of Trustees adopted the Appeals Committee's recommendation and denied Thomas's claim.

¶13. Thomas appealed the Board's decision to the Hinds County Circuit Court. The circuit court affirmed the Board's decision, concluding that it was supported by substantial evidence and was not arbitrary or capricious. Thomas again appealed.

**ANALYSIS**

¶14. On appeal, Thomas argues that the Board's decision "is legally incorrect and not supported by substantial evidence because Dr. Jimmy Wolfe's opinion that Thomas suffers from 'post concussive syndrome' and is 'unlikely to improve' is not contradicted by" other evidence in the record. Thomas also argues that the Board's decision was arbitrary and capricious because the Appeals Committee did not "attempt to obtain" records from her Social Security Disability file and instead requested additional medical records that were, in Thomas's view, "less relevant." We address these issues in turn below.

I. **The PERS Board's decision is supported by substantial evidence and is not arbitrary or capricious.**

¶15. Our review of a PERS disability determination "is limited to a determination of

5

whether the PERS Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the authority of the Board to make; or (4) violated a statutory or constitutional right of the claimant." *Buckhaults v. Pub. Emps.' Ret. Sys.*, 296 So. 3d 727, 730-31 (¶8) (Miss. Ct. App. 2019) (citing *Thomas v. Pub. Emps.' Ret. Sys.*, 995 So. 2d 115, 118 (¶14) (Miss. 2008)), *cert. denied*, 297 So. 3d 1110 (Miss. 2020). "Because the [PERS Board is the] finder of fact, [we are] obligated to show substantial deference to any determination of credibility or trustworthiness of witness testimony." *Id.* at 731 (¶9) (quotation marks omitted). "There is a rebuttable presumption in favor of a PERS ruling." *Id.* (quoting *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶15) (Miss. Ct. App. 2008)). "[E]ven if we would have reached a different conclusion had we been sitting as finder of fact, we may not re-weigh the evidence and substitute our own opinion for that of the PERS Board." *Id.*

¶16.    "Substantial evidence has been defined by this Court as such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017) (quotation marks omitted) (quoting *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012)). "To be substantial, the evidence must be something more than a mere scintilla or suspicion." *Knight*, 108 So. 3d at 915 (¶13). A "decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Buckhaults*, 296 So. 3d at 732 (¶12) (quoting *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1285 (¶16) (Miss. 2005)). A decision is capricious if it is made "without reason, in a whimsical manner, implying either a lack of

understanding of or disregard for the surrounding facts and settled controlling principles."

*Id.* (quoting *Howard*, 905 So. 2d at 1285 (¶16)).

¶17.    For purposes of PERS disability determinations, "disability" is defined as

> the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.

Miss. Code Ann. § 25-11-113(1)(a).  An applicant for disability benefits must also show that

her "incapacity is likely to be permanent."  *Id.*  In addition, the applicant must prove her

claim based on "objective medical evidence." PERS Regulation 45A, 27 Miss. Admin. Code

pt. 210, r. 1:45A (Aug. 1, 2012).  Objective medical evidence is defined to include:

> reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques, including, but not limited to, chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests.

*Id.*  "Non-medical information not documented by test results, such as an applicant's

description of pain, is not considered objective medical evidence."  *Id.*[2]

¶18.    Moreover, an applicant for *duty-related* disability benefits must make the additional

_____

[2] Effective July 1, 2016, the Legislature codified PERS Regulation 45A and its definition of "objective medical evidence" with only minor alterations.  *See* 2016 Miss. Laws ch. 397, § 10 (H.B. 899); Miss. Code Ann. § 25-11-113(1)(b) (Supp. 2016). We quote the regulation here because its codification occurred after Thomas was injured and filed her claim.

7

showing that her disability is "a direct result of a physical injury sustained from an accident or traumatic event caused by external violence or physical force occurring in the line of performance of duty." Miss. Code Ann. § 25-11-114(6) (Supp. 2011). As noted above, Thomas applied only for duty-related disability benefits because, as a non-vested member of PERS, she was ineligible for non-duty-related disability benefits. *See supra* n.1. Before the Medical Board and the Appeals Committee, the applicant bears the burden of proving both that "she is in fact disabled" and "that [s]he was disabled as a direct result of an on-the-job injury." *Pub. Emps.' Ret. Sys. v. Smith*, 880 So. 2d 348, 352 (¶20) (Miss. Ct. App. 2004).

¶19. In the present case, the Appeals Committee found that Thomas fell in the course of her employment. However, the Committee found that Thomas failed to meet her burden of proving that she was disabled as a direct result of the fall. The Committee began by acknowledging Thomas's complaints regarding headaches, a loss of balance, and "seeing stars." But the Committee found that Thomas's complaints were "subjective and . . . largely not supported by the objective medical evidence."

¶20. The Committee reasoned that "medical tests performed immediately after the accident are the best available objective medical evidence of injuries, or the absence thereof, resulting from the accident." On the day she fell, while at St. Dominic Hospital, Thomas underwent CT scans of her head and back and an MRI of her brain. Similar tests were performed at St. Dominic one week later. On both days, Thomas was discharged immediately after the test results were received, and all tests showed no significant injuries.

¶21. In addition, the Committee relied on Dr. Blount's finding that "Thomas had a

8

completely normal neurologic exam with respect to strength, sensation, and reflexes." Dr. Blount assigned Thomas "no restrictions from a physical medicine standpoint (cervical, lumbar, or musculoskeletal perspective)."

¶22.   The Committee also noted that although Dr. Wolfe had diagnosed Thomas with a migraine variant and post-concussive syndrome that was "unlikely to improve," Dr. Wolfe also assigned her no restrictions from a neurological standpoint. In addition, in a subsequent statement to an insurance company, Dr. Wolfe stated that Thomas was not totally disabled from her job as a bus aide or any other work, although he stated that she was "partially disabled secondary to pain."

¶23.   The Committee further noted that there was medical evidence that at least some of Thomas's complaints predated her fall at work and were not a direct result of that on-the-job accident. For example, almost a year before the accident, Thomas complained of low back pain and difficulty walking, and she was diagnosed with a herniated disc and osteoarthritis. In addition, there was evidence that Thomas had been involved in a prior automobile accident in which her car was "t-boned" by another vehicle. Medical records also documented that prior to her workplace accident, Thomas had complained of headaches, loss of balance, difficulty walking, and weakness in her legs.

¶24.   Finally, the Committee noted that Thomas's job as a bus aide mainly involved sitting and did not require lifting, and Thomas continues to drive her own car. The Committee further observed that there was no direct evidence regarding Thomas's ability or inability to perform her job duties because she never reported back to work after the accident.

¶25. "[A] reviewing court may not substitute its judgment for [PERS] and may not reweigh the facts." *Pub. Emps.' Ret. Sys. v. Stamps*, 898 So. 2d 664, 673 (¶28) (Miss. 2005). "[I]t is for PERS, as the fact finder, to determine which evidence is more believable or carries the most weight." *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1287 (¶21) (Miss. 2005). "The question [for this Court] is not whether there was evidence in support of [Thomas's] disability [claim], but whether there was substantial evidence to support [the PERS Board's] finding" that Thomas failed to meet her burden to prove that claim. *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 892 (¶12) (Miss. 2001). In this case, there is indeed substantial evidence to support the Board's finding that Thomas failed to meet her burden. Accordingly, the Board's decision is not arbitrary or capricious[3] and must be affirmed.

## II. The PERS Board was not required to seek out additional records from the Social Security Administration.

¶26. At her hearing before the Appeals Committee, Thomas submitted a letter from the Social Security Administration informing her that she had been awarded disability benefits as of September 25, 2014. However, Thomas did not offer any other records related to her Social Security claim. Thomas notes that during her hearing, her lawyer offered that her "complete Social Security file [could] be obtained" and that he "ha[d] no objection if the committee want[ed] to obtain that." After the hearing, the Appeals Committee did not obtain additional records from the Social Security Administration but did request additional records from St. Dominic Hospital. On appeal, Thomas argues that the Appeals Committee's

---

[3] "If an agency's decision is supported by substantial evidence, then it is not arbitrary or capricious." *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 964 (¶17) (Miss. 2004).

decision not to request her full Social Security file was arbitrary and capricious.

¶27. We disagree. To begin with, "it is well settled that 'PERS is not bound by any finding of the Social Security Administration.'" *Davidson*, 219 So. 3d at 583 (¶20) (quoting *Stamps*, 898 So. 2d at 675 (¶35)). "Social Security is a separate agency from PERS and governed by different laws." *Dishmon*, 797 So. 2d at 896 (¶30).

¶28. In addition, the burden of proof rests on the applicant for disability benefits, not the Disability Appeals Committee or the agency as a whole. *Smith*, 880 So. 2d at 352 (¶20). "The purpose of the Appeals Committee is to evaluate proof, not offer evidence." *Thomas v. Pub. Emps.' Ret. Sys.*, 995 So. 2d 115, 120 (¶21) (Miss. 2008). If Thomas thought other information in her Social Security file supported her claim, she should have offered that evidence at her hearing.

¶29. Thomas points out that a statute grants the Appeals Committee and the Board "the authority to defer a decision in order to request . . . additional existing medical records not previously furnished by the claimant." Miss. Code Ann. § 25-11-120(1) (Rev. 2018). "But," as this Court has previously stated, "the *authority* to request [such records] does not *require* PERS to defer a case to obtain or review every possible record." *Richardson v. Pub. Emps.' Ret. Sys.*, 290 So. 3d 1265, 1272 (¶16) (Miss. Ct. App. 2019) (emphasis added). The statute merely grants PERS *discretionary* authority to request additional records. *Id.* The burden of producing evidence sufficient to support her claim rests on *the claimant*, not PERS. *Id.* (citing *Stevison v. Pub. Emps.' Ret. Sys.*, 966 So. 2d 874, 882 (¶27) (Miss. Ct. App. 2007)).[4]

---

[4] On appeal, Thomas relies on *Stevison*. In that case, a pro se claimant had submitted medical records from four physicians and a medical clinic but not from other physicians who

11

Here, there is substantial evidence to support the PERS Board's determination that Thomas failed to meet her burden, and neither the Appeals Committee nor the Board was under an obligation to search out additional records that might have supported Thomas's claim. Accordingly, this issue is without merit.

## CONCLUSION

¶30.    The PERS Board's decision to deny Thomas's application for duty-related disability benefits is supported by substantial evidence and is neither arbitrary nor capricious.

¶31.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

had treated her. *Stevison*, 966 So. 2d at 882 (¶26). PERS denied her claim based in part on its "assumption" that those other "physicians had opined she was not disabled." *Id.* Essentially, PERS drew an adverse inference regarding the contents of those physicians' records. *Id.* This Court held that PERS's decision was arbitrary, reasoning that "when PERS foregoes its option to order additional medical records, it cannot assume the missing records contained opinions of no disability." *Id.* at (¶27). *Stevison* is readily distinguishable from this case. Here, PERS did not base its decision on any assumption or adverse inference regarding the contents of Thomas's Social Security file. Rather, PERS based its decision on evidence *in the record* and Thomas's failure to meet her burden to prove that she had a duty-related disability.