# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-SA-00189-COA

REBECCA S. DAVIDSON                                                    APPELLANT

v.

PUBLIC EMPLOYEES' RETIREMENT SYSTEM                          APPELLEE
OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/2016 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JOHN T. BALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI'S DECISION TO TERMINATE DISABILITY PAYMENTS |
| DISPOSITION: | AFFIRMED - 05/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    In 2013, Rebecca Davidson applied for and was granted non-duty-related disability

benefits from the Public Employees' Retirement System of Mississippi (PERS). In 2014,

PERS reexamined Davidson's claim, and the PERS medical board recommended that her

benefits should be terminated because she was physically and mentally capable of returning

to her employment. Davidson appealed to the PERS disability appeals committee (DAC),

and the DAC also found that she was capable of returning to work and that her benefits

should be terminated. The PERS board of trustees adopted the proposed opinion and recommendation of the DAC and denied her request for continued benefits. Davidson then appealed to the Hinds County Circuit Court, First Judicial District, which affirmed the decision of the board of trustees. Davidson appealed again to this Court, arguing that the agency's decision is not supported by substantial evidence. Because PERS's decision is supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Davidson is a state employee with twelve years of state service. She was last employed as the Americans with Disabilities Act (ADA) coordinator at the Natchez branch of Copiah-Lincoln Community College (Co-Lin). Her job involved meeting with students to determine their eligibility for assistance, conferring with instructors about students' needs, and monitoring students' progress. She was responsible for about fifteen students.

¶3. Davidson testified that in 2012 she began to miss work frequently because of mental health issues and "difficulties at home." She testified that she eventually sought treatment for her mental health issues at St. Dominic's Hospital in Jackson because she was having suicidal thoughts. She testified that she was evaluated and that outpatient treatment was recommended. Davidson attended outpatient therapy with Dr. William Cook, a psychiatrist, for seventeen weeks starting in July 2012. Dr. Cook diagnosed Davidson with post-traumatic stress disorder, ADHD, and bipolar disorder. Davidson continued to see Dr. Cook periodically thereafter. Initially, she saw Dr. Cook every other week, but later she saw him only once per month, and at the time of the hearing in this matter she saw him only once

2

every three months.

¶4. It appears that Davidson did not return to work at Co-Lin after July 2012. She terminated her employment at Co-Lin on December 10, 2012, and applied with PERS for non-duty-related disability benefits in January 2013. At the time, Dr. Cook certified that, in his opinion, Davidson was "unable to work at all" due to her mental health issues, severe mood swings, anxiety, depression, and difficulty concentrating. In her application, Davidson stated that she was unable to do anything "involving memory" or "being around people."

¶5. On April 25, 2013, PERS approved Davidson's application for non-duty-related disability with a reexamination after one year pursuant to Mississippi Code Annotated section 25-11-113(3) (Supp. 2014).

¶6. In May 2013, Davidson presented at St. Dominic's emergency room. She exhibited symptoms of depression and expressed suicidal thoughts. In July 2013, Davidson was approved for Social Security disability benefits. That month she began seeing family therapist Mary Ann Simmons. She also continued to see Dr. Cook periodically. She testified that she became depressed and suicidal again in January 2014.

¶7. On April 24, 2014, PERS informed Davidson that her disability claim was scheduled for reevaluation and requested that she submit updated medical information and forms from her treating physicians. On June 12, 2014, Dr. Cook completed an updated "Statement of Examining Physician" (PERS Form DSBL 7). Dr. Cook indicated a primary diagnosis of "mild" bipolar disorder and a secondary diagnosis of "mild" ADHD. Dr. Cook further indicated that Davidson had reached maximum medical improvement, that she had no

3

impairments or restrictions due to her condition, and that her prognosis for recovery was good. After reviewing the information provided by Davidson and Dr. Cook, PERS requested that Davidson undergo an independent medical evaluation (IME).

¶8.     On August 23, 2014, Davidson underwent an IME by Dr. John Montgomery, a psychiatrist. Dr. Montgomery diagnosed Davidson with depression and anxiety disorder, both in remission, and borderline personality traits. Dr. Montgomery found no "evidence to support a diagnosis of PTSD or bipolar disorder." Dr. Montgomery also concluded that, "[f]rom a psychiatric standpoint, [Davidson's] prognosis was good," and he "could not find any compelling evidence that [Davidson] would be presently unable to handle the stresses and demands of appropriate employment."

¶9.     On November 12, 2014, PERS informed Davidson that the PERS medical board, comprised of three physicians, had determined that her disability benefits should be terminated effective January 31, 2015, because she was physically and mentally able to return to employment. Davidson appealed the medical board's decision to the DAC.

¶10.    On February 9, 2015, the DAC, comprised of two physicians and an attorney, held a hearing on Davidson's claim. Davidson submitted notes from a February 1, 2015 office visit with Dr. Cook, as well as a January 28, 2015 letter from Dr. Cook. Dr. Cook disagreed with Dr. Montgomery's diagnosis and stated that he was "not recommending" that Davidson return to work. Dr. Cook stated that Davidson's illnesses, including bipolar disorder and PTSD, "have symptoms that wax and wane over time." Dr. Cook stated that Davidson was not acutely suicidal but was still "on multiple psychiatric medications and requir[ed] close

4

monitoring for her mood instability." Dr. Cook reported that Davidson was "frustrated and upset" by Dr. Montgomery's report. Davidson's family therapist, Simmons, also submitted a letter urging PERS to allow Davidson to remain on disability.

¶11. Davidson testified at the hearing before the DAC that she stopped coming to work in 2012 because her "behavior was irrational" and she "had outbursts of rage." She testified that, at that time, she was severely depressed and "felt rejected" and "unloved." She finally sought treatment at St. Dominic's when she "kind of hit rock bottom" and felt "somewhat suicidal." She testified that the "main reason" she could not go back to work was because she "cannot remember like [she] used to could remember"—her "memory just does not work right." She testified that she sometimes does something but has "no recollection" of having done it, and that she "can't stay focused." Davidson also testified that she has a "very intense fear of being around people" and that she is "afraid of being judged" or "criticized." Davidson testified that she still experienced outbursts of rage and severe depression.

¶12. At the hearing, Davidson also testified that when she was a GED examiner at Co-Lin, prior to the time she became ADA coordinator, there was an incident where one of her examination books turned up missing. She said this caused her a "massive amount of shame and guilt and racing thoughts," "[a]nd that's when everything started failing at work." This incident appears to have occurred in 2010, two years before she stopped coming to work. Davidson testified that Co-Lin later provided her with an aide to help her with paperwork, but the aide was "elderly" and "forgetful" and was not "much help" to her. Davidson also testified that her "alcoholic ex-husband" was a source of stress and anxiety. Davidson

5

continued to live with the ex-husband long after they were divorced. The ex-husband quit drinking, but according to Davidson, that only made things "worse" "[b]ecause he became holier than thou." Davidson testified that the prospect of losing her disability benefits had also caused her a tremendous amount of stress and anxiety.

¶13.    Following the hearing, the DAC submitted a sixteen-page proposed statement of factual findings and conclusions of law to the PERS board of trustees. The DAC discussed Davidson's work history and medical history, her medical treatment and counseling, and the opinions of Dr. Cook, Dr. Montgomery, and others. The DAC found that Davidson was physically and mentally capable of returning to her employment and, therefore, was no longer disabled within the meaning of Mississippi Code Annotated section 25-11-113(1)(a). Accordingly, the DAC recommended that Davidson's request for continued non-duty-related disability benefits be denied. On February 21, 2015, the board of trustees adopted the DAC's recommendation to terminate Davidson's disability benefits.

¶14.    Davidson subsequently filed a timely notice of appeal to the circuit court. After Davidson and PERS submitted briefs, the circuit court affirmed the decision of the board of trustees. Davidson again filed a timely notice of appeal.

**DISCUSSION**

¶15.    Our review of PERS disability determinations "is limited": PERS's determination "must remain undisturbed unless [its] order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates [the claimant's] constitutional rights." *Pub. Emps' Ret. Sys. v. Howard*, 905 So. 2d

6

1279, 1284 (¶13) (Miss. 2005) (quoting *Pub. Emps' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000)). "'Substantial evidence' has been defined by this Court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Knight v. Pub. Emps' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012) (quoting *Pub. Emps' Ret. Sys. v. Dishmon*, 17 So. 3d 87, 91 (¶19) (Miss. 2009)). "A rebuttable presumption exists in favor of PERS's decision, and [the claimant has] the burden of proving the contrary." *Dearman v. Pub. Emps' Ret. Sys.*, 205 So. 3d 1100, 1103 (¶10) (Miss. Ct. App. 2016) (quoting *Brinston v. Pub Emps' Ret. Sys.*, 706 So. 2d 258, 259 (¶5) (Miss. Ct. App. 1998)). Moreover, we are "obligated to afford [the agency's] determinations of credibility in the fact-finding process substantial deference." *Pub. Emps' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003). We will not "re-evaluate the evidence" or "make[] [our] own determination of the trustworthiness of some particular testimony." *Id.*

¶16.    As a PERS disability retiree, Davidson was required to submit to periodic medical reexaminations of her condition. Miss. Code Ann. § 25-11-113(3). If, after such a reexamination, the PERS medical board finds and certifies that the disability retiree "is physically and mentally able to return to the employment from which [s]he is retired, the board of trustees . . . shall, after a reasonable period of time, terminate the disability allowance, whether or not the retiree is reemployed or seeks that reemployment." Miss. Code Ann. § 25-11-113(6). As this Court has observed, "[c]learly the Legislature did not intend that a determination of disability is permanent." *Freeman v. Pub. Emps' Ret. Sys.*, 822 So. 2d 274, 280 (¶18) (Miss. 2002). Rather, to continue to receive disability benefits, a claimant

7

must show that she remains physically or mentally unable to return to the employment from which she is retired. *See* Miss. Code Ann. § 25-11-113(6).

¶17. The evidence presented at the hearing before the DAC is discussed above. Dr. Montgomery conducted an IME of Davidson, and in his thorough August 23, 2014 report to the medical board, Dr. Montgomery found no "compelling clinical evidence that [Davidson] would be . . . unable to handle the stresses and demands of appropriate employment." Dr. Montgomery's conclusion was consistent with Dr. Cook's most recent Form DSBL 7, which he signed on June 12, 2014. Therein, Dr. Cook certified that Davidson was at maximum medical improvement with no impairments or restrictions and that her prognosis for recovery was "good." Also, Dr. Cook's office notes from his appointment with Davidson on April 25, 2014, reflect that Davidson was "doing the best [he had] seen." She was "smiling" with "no complaints" and her mood was "euthymic," i.e., non-depressed and normal. By this time, Davidson was seeing Dr. Cook only once every three months. All of this constitutes substantial evidence to support the board of trustees' decision that Davidson was no longer disabled and was physically and mentally capable of returning to work.

¶18. Davidson argues that PERS should have adopted and followed Dr. Cook's subsequently expressed opinions that she should not return to work. She contends that Dr. Cook's later opinions are more credible or persuasive than Dr. Montgomery's. However, when the relevant evidence and opinions of physicians conflict, it is the responsibility of PERS—through its medical board, DAC, and board of trustees—to sort through the conflicting evidence and to determine which is more credible and persuasive. We do not

second-guess or reevaluate such determinations when, as in this case, they are supported by substantial credible evidence. *See, e.g.*, *Howard*, 905 So. 2d at 1287 (¶23); *Pub. Emps' Ret. Sys. v. Stamps*, 898 So. 2d 664, 674 (¶32) (Miss. 2005). Furthermore, "the question [for this Court] is *not* whether there was evidence in support of [Davidson's] disability, but whether there was substantial evidence to support the finding of [PERS]" that she is capable of returning to her prior employment. *Pub. Emps' Ret. Sys. v. Dean*, 983 So. 2d 335, 340 (¶17) (Miss. Ct. App. 2008) (quotation marks omitted). The evidence before PERS—including Dr. Montgomery's report and opinion, the DSBL 7 completed by Dr. Cook, and Dr. Cook's office notes—was adequate and substantial evidence to support the agency's finding.

¶19. Davidson also asserts that Dr. Montgomery's "opinion was of little value as he did not have an opportunity to consider Dr. Cook's" subsequently proffered opinions, including Dr. Cook's opinions that Davidson's mental state had deteriorated because she was worried about losing her disability benefits. This argument goes to the weight of Dr. Montgomery's opinion, not its sufficiency. One physician's opinion is not rendered incompetent or invalid just because another physician later offers different or additional opinions. Again, the persuasiveness of the doctors' respective opinions was a matter for PERS to determine, not a reviewing court.

¶20. Finally, Davidson argues that she "has been approved for Social Security [d]isability benefits" and that this "recognize[s] her inability to perform the substantial acts of her prior employment or any other jobs in existence in the United States economy." However, it is well settled that "PERS is not bound by any finding of the Social Security Administration."

9

*Stamps*, 898 So. 2d at 675 (¶35) (quoting *Doyle v. Pub. Emps' Ret. Sys.*, 808 So. 2d 902, 907 (¶16) (Miss. 2002)).

¶21. In summary, there is substantial evidence to support PERS's finding that Davidson is capable of returning to work and is no longer disabled within the meaning of the statute. Davidson's arguments to the contrary are without merit. Accordingly, the judgment of the circuit court, affirming PERS's decision to deny Davidson's request for continued benefits, is affirmed.

¶22. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**