# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-01183-COA

**AMY SHERMAN-OLIVER**                      **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**         **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2018 |
| TRIAL JUDGE: | HON. JOSEPH ANTHONY SCLAFANI |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SAMUEL MARTIN MILLETTE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 02/11/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### CARLTON, P.J., FOR THE COURT:

¶1. Amy Sherman-Oliver applied for non-duty-related disability retirement benefits with the Public Employees' Retirement System of Mississippi (PERS). PERS denied Sherman-Oliver's application for benefits after determining that she failed to present sufficient objective medical evidence to support her claim. Sherman-Oliver then appealed to the Hinds County Circuit Court, which affirmed PERS's decision.

¶2. Sherman-Oliver now appeals, arguing that PERS's decision is not supported by substantial evidence and that her right to due process had been violated because the Independent Medical Examiner requested by PERS, Dr. David Collipp, did not examine her.

¶3. After our review, we find PERS's decision that Sherman-Oliver was not disabled is not supported by substantial evidence. We therefore reverse and render the circuit court's judgment affirming PERS's order denying non-duty-related disability retirement benefits.

**FACTS**

¶4. Sherman-Oliver was employed as an Administrative Assistant/Purchasing Agent for Jackson-George Regional Library System for approximately eleven years until she resigned from her job in August 2012. In September 2012, Sherman-Oliver applied for non-duty-related disability retirement benefits with PERS and indicated that she was unable to perform her job duties due to cervical dystonia[1] and depression.

¶5. On May 30, 2013, the PERS Medical Board denied Sherman-Oliver's application for disability benefits after finding that she failed to provide sufficient objective medical evidence to support her claim. Sherman-Oliver appealed to the PERS Disability Appeals Committee (Committee). After a hearing on the matter in October 2013, the Committee recommended that the PERS Board of Trustees (the Board) deny Sherman-Oliver's claim for non-duty-related disability retirement benefits.

¶6. The Board adopted the recommendation of the Committee and entered an order denying benefits. Sherman-Oliver then appealed to the circuit court. Before the circuit court could hear the matter, the court reporter present at the prior hearing died, and a transcript of

---

[1] Sherman-Oliver represents in her brief to this Court that according to the Mayo Clinic website, cervical dystonia, also called spasmodic torticollis, is a painful condition in which a person's neck muscles contract involuntarily, causing one's head to twist or turn to one side. The record on appeal suggests that cervical dystonia can also cause a person's head to uncontrollably tilt forward or backward. Throughout the record, the condition is also referred to as "spasmodic torticollis."

the hearing could not be found. The circuit court entered an agreed order remanding the matter to PERS for a hearing de novo.

¶7. The Committee held this subsequent hearing on September 19, 2016. At the hearing, Sherman-Oliver testified that she was the purchasing agent for eight library branches. As for her job requirements, Sherman-Oliver stated that weight-wise, the most she was required to lift were boxes of copier paper on occasion. She estimated these boxes weighed about twenty pounds. Sherman-Oliver testified that she left her job when she started suffering headaches, pulling in her neck, and experiencing trouble sitting in a chair. She also said she could not handle the anxiety. Sherman-Oliver stated that while working, she suffered headaches every day and rated the pain "around an eight or a nine" on a scale of one to ten.

¶8. Sherman-Oliver also described symptoms of her medical diagnosis of cervical dystonia. She testified that her neck problems began in 2003 and cause her to suffer headaches, as well as shoulder and neck pain. She has been treated with Botox injections every three months since 2008. The most recent Botox shot was in July 2016. Sherman-Oliver stated that it usually takes about two weeks before she sees any relief from the Botox treatment and that she receives varying amounts of relief from the injections. She stated that she occasionally takes Morphine for pain. Sherman-Oliver testified that she suffers from depression and anxiety.

¶9. Sherman-Oliver testified that since she is no longer working, she typically gets out of bed between 9:00 and 10:00 a.m. She eats breakfast and then sits in her recliner, watches television, and uses her laptop during the day. She said she might do some cooking, light

3

housework, mopping, or laundry. She testified that some days she does not leave the house, although she does go to church on Sundays.

¶10.    Sherman-Oliver's employer filled out a PERS Form 6B "Employer's Certification of Job Requirements." Carol Hewlett, the director of the library system, filled out the form on behalf of the Jackson-George Regional Library System. When asked, "In your opinion, can the employee perform his/her job?" Hewlett checked "no" and explained that in a note written on April 25, 2012, Sherman-Oliver's doctor stated that Sherman-Oliver could not perform all clerical duties due to severe headaches and neck pain due to cervical dystonia. Hewlett marked on the form that Sherman-Oliver does not appear to be motivated toward continuing her current employment. Hewlett confirmed that the library system had provided Sherman-Oliver with accommodations, including an ergonomic chair and any medical leave as needed, including twelve weeks of leave time under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (2018). Hewlett also stated that Sherman-Oliver was allowed to change position from sitting to standing, and vice versa, as often as needed while performing her job.

¶11.    The Committee's order reflects that it reviewed medical evidence submitted by Dr. Terry Millette, a neurosurgeon and Sherman-Oliver's treating physician. The Committee also reviewed reports from the following physicians: (1) Dr. Sera Cox, a psychiatrist who treated Sherman-Oliver for depression and generalized anxiety; (2) Dr. Sheree Starr, Sherman-Oliver's treating psychologist; (3) Dr. John Montgomery, a psychiatrist who examined Sherman-Oliver at the request of PERS; and (4) Dr. Collipp, a physical medicine

4

specialist who examined Sherman-Oliver at the request of PERS.

¶12.    In January 2013, Dr. Millete completed a PERS "DSBL 7 Form (Statement of Examining Physician)." Dr. Millette stated that Sherman-Oliver's primary diagnosis was spasmodic torticollis with a secondary diagnosis of headaches and depression. In the sections for "Symptoms and Objective Findings," Dr. Millette listed the following: range of motion diminished, head tilt, and muscular swelling. According to Dr. Millette, Sherman-Oliver was disabled, and she had been disabled as of May 11, 2012. Dr. Millette opined that Sherman-Oliver had reached maximum medical improvement. He indicated that Sherman-Oliver should avoid prolonged sedentary work because it would increase her neck pain and headaches and that she should not lift more than twenty pounds.

¶13.    As for Sherman-Oliver's anxiety, the record shows that Dr. Sera Cox, a psychiatrist, treated Sherman-Oliver for depression and generalized anxiety as early as 2009 and last saw her in 2012. Dr. Cox referred Sherman-Oliver to Dr. Sheree Starr for psychotherapy.

¶14.    Sherman-Oliver's psychologist, Dr. Sheree Starr, also completed a PERS DSBL 7 Form in January 2013. Dr. Starr listed Sherman-Oliver's primary diagnosis as generalized anxiety disorder with her second diagnoses as recurrent major-depressive disorder that was in remission, and a preexisting dystonic disorder. Dr. Starr noted that Dr. Millette had given Sherman-Oliver restrictions due to her cervical dystonia, but she stated that Sherman-Oliver was not psychiatrically disabled. According to Dr. Starr, Sherman-Oliver's prognosis for recovery was fair to good, and she estimated that Sherman-Oliver would reach maximum medical improvement by December 2013.

5

¶15. In April 2013, Sherman-Oliver underwent an Independent Medical Examination (IME) at PERS's request. In a report summarizing the examination, Dr. Collipp indicated that he was not qualified to give an opinion as to Sherman-Oliver's psychological issues. However, as to Sherman-Oliver's spastic torticollis, the report stated that it was "not evident" during the examination. Dr. Collipp stated that Sherman-Oliver does have "multiple trigger points in her cervical region," but he found that her range of motion was intact and symmetrical. According to the report, Sherman-Oliver was capable of rarely lifting up to thirty-five pounds, but not fifty pounds. It noted that Sherman-Oliver had "some room for physical improvement," but she was not likely to improve to lifting fifty pounds. The written report signed by Dr. Collipp concluded that "[o]ther aspects of [Sherman-Oliver's] job as noted are within her functional capacity."

¶16. Subsequently, PERS sent a letter to Sherman-Oliver's employer, asking if Sherman-Oliver could have been accommodated in rarely lifting thirty-five pounds, but not fifty pounds. Cynthia Winters, the Personnel and Reports Manager, replied that such an accommodation could have been made.

¶17. In November 2013, Dr. John Montgomery, a psychiatrist, conducted an Independent Psychiatric Examination at PERS's request. During the examination, Sherman-Oliver reported that she experienced symptoms of depression most of her life but that she did not have symptoms of cervical dystonia until 2003. According to Sherman-Oliver, she began having problems at work in 2005. And when she resigned from her job in 2012, she applied for other county and state-level jobs but was not hired. Sherman-Oliver informed Dr.

6

Montgomery that as a result of increasing stress and physical discomfort, she applied for disability benefits. In his report, Dr. Montgomery noted that Sherman-Oliver had described problems with her former coworkers, and she was "preoccupied with the social and political climate of former workplace[.]"

¶18. When Dr. Montgomery asked Sherman-Oliver to describe a typical day, Sherman-Oliver stated that she would wake up and watch television or use the computer. Then she would eat breakfast and do light housework. Afterward, she would return to the television or computer with breaks for lunch and dinner. Sherman-Oliver also told Dr. Montgomery that she did not have any driving restrictions and was involved in her church.

¶19. In his report, Dr. Montgomery noted that at the time of the IME, Sherman-Oliver was experiencing mild-to-moderate symptoms of depression and moderate levels of generalized anxiety. As a result, he expected her to have only mild difficulty handling the stresses and demands of a workplace environment. However, Dr. Montgomery noted that she held on to "a great deal of animosity and jealousy towards [her former] coworkers and supervisors" and may do better in another workplace. Dr. Montgomery concluded that Sherman-Oliver's prognosis from a psychiatric standpoint was fair.

¶20. In December 2013, Sherman-Oliver sent a letter to PERS, which contained additional information for PERS's consideration. Among other things, Sherman-Oliver wrote that Dr. Collipp did not examine her during the IME. Rather, she was examined by Dr. Eric Amundson. Sherman-Oliver also claimed that she tried to change jobs before leaving the library system, but no one would hire her.

¶21. The transcript reflects that at the hearing, Sherman-Oliver's attorney asked the Committee to give "special review to the treating physician, Dr. Millette." However, Sherman-Oliver's attorney did not raise any argument that Dr. Collipp's findings should have been disregarded.

¶22. The Committee entered its "Proposed Statement of Facts, Conclusion of Law, and Recommendation," recommending that the Board deny Sherman-Oliver's claim for non-duty-realted disability retirement benefits after determining that "there is insufficient evidence to support a finding that Ms. Sherman-Oliver is likely permanently disabled from performing her job." The Committee explained that it "is persuaded by the objective findings and opinions of Dr. Collipp, Dr. Montgomery, and Dr. Starr that Ms. Sherman-Oliver has the physical ability to continue to perform her job and the mental ability to continue working." The Committee stated that out of all five doctors, Sherman-Oliver's treating physician, Dr. Millette, "is the only one giving an opinion that Ms. Sherman-Oliver is disabled." However, the Committee held that the medical evidence produced by Sherman-Oliver was insufficient to support her claim that she is disabled. The Committee explained that "[w]e use as support for this conclusion, the medical expertise of this Committee, the objective evidence contained in the record, and the Independent Medical Evaluations, including both physical and mental examinations and evaluations."

¶23. The Committee also noted that Sherman-Oliver had been approved for Social Security disability benefits. However, the Committee stated that "[w]hile this Committee, which includes two board certified physicians, takes the Social Security Administration's decision

8

into consideration, it is not bound by that determination."

¶24. In an order signed October 25, 2016, the Board approved and adopted the recommendation of the Committee and denied Sherman-Oliver's request for non-duty-related disability retirement benefits. In November 2016, Sherman-Oliver appealed to the circuit court, which affirmed PERS's denial of Sherman-Oliver's application for benefits. The circuit court specifically found that PERS's decision was supported by substantial evidence and that Sherman-Oliver waived her claim that her right to due process had been violated. This appeal followed.

## DISCUSSION

### I.    Substantial Evidence

¶25. On appeal, "[t]he issue before this Court is not whether there was evidence in support of [Sherman-Oliver's] disability, but whether there was substantial evidence to support the finding of [PERS]." *Doyle v. Pub. Emps' Ret. Sys.*, 808 So. 2d 902, 905 (¶8) (Miss. 2002). When reviewing the decision of an administrative agency, we recognize that "[a]n agency's conclusions must remain undisturbed unless the agency's order: 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Pub. Emps' Ret. Sys. v. Walker*, 126 So. 3d 892, 894-95 (¶5) (Miss. 2013). This Court has defined "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson v. Pub. Emps' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017) (internal quotation marks omitted) (*Knight v. Pub. Emps' Ret. Sys.*, 108 So. 3d 912,

915 (¶13) (Miss. 2012). "To be substantial, the evidence must be something more than a mere scintilla or suspicion." *Knight*, 108 So. 3d at 915 (¶13). Furthermore, "[t]his Court may neither substitute its own judgment for that of the agency which rendered the decision nor reweigh the facts of the case." *Walker*, 126 So. 3d at 895 (¶5). "A rebuttable presumption exists in favor of PERS's decision, and the claimant has the burden of proving the contrary." *Davidson*, 219 So. 3d at 581 (¶15).

¶26. The Committee's order reflects that it reviewed medical evidence submitted by Dr. Millette, a neurosurgeon and Sherman-Oliver's treating physician. Dr. Millette began seeing Sherman-Oliver in 2007. The Committee found that Dr. Millette gave Sherman-Oliver a primary diagnosis of spasmodic torticollis and secondary diagnosis of headaches. Dr. Millette restricted Sherman-Oliver to no lifting over twenty pounds, and he listed a permanent partial impairment of 5-10% to the cervical spine. Dr. Millette opined that she has reached maximum medical improvement. The Committee noted that Dr. Millette completed forms indicating that Sherman-Oliver should avoid prolonged sedentary work due to this activity increasing Sherman-Oliver's neck pain and headaches. Notably, the Committee recognized that Dr. Millette concluded Sherman-Oliver was disabled and unable to return to work beginning May 11, 2012, with no return-to-work date offered. In fact, Dr. Millette stated that Sherman-Oliver is "not to return" to work.

¶27. However, the Committee stated that Dr. Millette's "office notes and the objective testing do not support his subjective statement" that Sherman-Oliver is disabled. The Committee also stated that although Dr. Millette listed Sherman-Oliver's only restriction as

10

no lifting over twenty pounds, Sherman-Oliver testified that boxes of copier paper were the only items at work she lifted that weighed this much. The Committee determined that "[t]his restriction could easily be accommodated by simply removing the reams of paper from the boxes and carrying them individually." The Committee found that despite Dr. Millette's statement that Sherman-Oliver should avoid prolonged sedentary work because it increased her neck pain and headaches, Sherman-Oliver testified that she spent most of her days at home, sitting in her recliner using her laptop computer. The Committee stated, "It appears that her sedentary activity at home is very similar to the duties of her job. Both are sitting tasks using a keyboard."

¶28. The Committee additionally noted that "Dr. Collipp reviewed and considered Dr. Millette's report of disability for headaches, spastic torticollis, and neck pain but he reached a different conclusion": Sherman-Oliver was physically capable of rarely lifting up to thirty-five pounds, but not fifty pounds, and she had the functional capabilities to perform her job. However, after reviewing Dr. Collipp's report, we find nothing to contradict Dr. Millette's disability claim or diagnosis of spastic torticollis. Rather, regarding Sherman-Oliver's physical impairments, Dr. Collipp stated that Sherman-Oliver "suffers with reported spastic torticollis, not evident on today's examination. She has multiple trigger points in her cervical region, but her [range of motion] is intact and symmetrical. No wry neck noted." Dr. Collipp found that Sherman-Oliver was capable of lifting up to thirty-five pounds rarely and that other aspects of her job were within her functional capacity.

¶29. The Committee also reviewed reports from psychiatrists Dr. Cox and Dr. Montgomery

11

and psychologist Dr. Starr. With respect to Sherman-Oliver's depression and anxiety, the Committee found that Dr. Montgomery agreed with Dr. Starr and Dr. Cox that Sherman-Oliver's "cognitive functioning is unimpaired and she is not psychiatrically disabled." The Committee explained that "[t]hese opinions are persuasive for this Committee." The Committee stated that it placed "significant weight on the fact that Dr. Starr, the . . . treating psychologist, has given Ms. Sherman-Oliver no restrictions independent of the opinion of Dr. Millette." The Committee noted that the restrictions appear to be compatible with Ms. Sherman-Oliver's job duties and that her employer stated that accommodations could be made for her.

¶30. The Committee ultimately determined that Sherman-Oliver is not disabled for purposes of PERS and that the medical evidence she produced was insufficient to support her claim that she is disabled. The Committee stated that it was "persuaded by the objective findings and opinions of Dr. Collipp, Dr. Montgomery, and Dr. Starr that Ms. Sherman-Oliver has the physical ability to continue to perform her job and the mental ability to continue working." The Committee found that out of the five doctors that examined and evaluated Sherman-Oliver, "Dr. Millette, [her] treating physician, is the only one giving an opinion that Ms. Sherman-Oliver is disabled."

¶31. In *Howard v. Public Employees' Retirement System of Mississippi*, 971 So. 2d 622, 627-28 (¶15) (Miss. Ct. App. 2007), PERS denied Sheila Howard's application for permanent disability benefits after finding that Howard's claim lacked sufficient objective medical evidence. On appeal, this Court found PERS's decision to deny benefits arbitrary

12

and capricious, explaining that Howard's treating physicians provided objective diagnoses of fibromyalgia and that "not one of the many doctors who examined Howard, including the independent medical examiner, Dr. Jones, contradicted Dr. Blanchard's diagnosis that Howard had a permanently debilitating case of fibromyalgia[.]" *Id*. at 628 (¶15). This Court recognized that it "would be required to give deference to the PERS decision if medical evidence had been presented contradicting Howard's disability claim, and PERS weighing the evidence as a fact finder had denied benefits"; however, "[t]hat is not what happened here." *Id*. at (¶16). Rather, "[t]he only medical evidence presented in this case was offered in support of Howard's claims, and that evidence went unrebutted by even the independent medical examiner appointed by PERS to examine Howard." *Id*. This Court also "note[d] that Howard has been determined to be disabled by the Social Security Administration (SSA). While PERS is not bound by the determination of the SSA that a person is disabled, such a determination may be considered as further evidence in support of disability." *Id*. at (¶15).

¶32. As stated, on appeal, this Court is tasked with determining whether there was substantial evidence to support PERS's finding that Sherman-Oliver was not disabled. *Doyle*, 808 So. 2d at 905 (¶8). This Court has defined "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson*, 219 So. 3d at 581 (¶15). "To be substantial, the evidence must be something more than a mere scintilla or suspicion." *Knight*, 108 So. 3d at 915 (¶13).

¶33. After reviewing the record before us, and for the reasons set forth in this opinion, we

13

determine PERS's finding that Sherman-Oliver was not disabled and its decision to deny Sherman-Oliver's application for non-duty-related disability retirement benefits were not supported by substantial evidence and are therefore arbitrary and capricious. *See Knight*, 108 So. 3d at 916 (¶13) ("[I]f an agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious."); *Pub. Emps' Ret. Sys. v. Marquez*, 774 So. 2d 421, 427 (¶20) (Miss. 2000) ("When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence."). Sherman-Oliver's treating physician diagnosed her as physically disabled due to a diagnosis of cervical dystonia and headaches. PERS determined that Dr. Millette's office notes and objective testing failed to support his "subjective" statement, but PERS failed to provide substantial evidence to support its conclusion. In *McGowan v. Mississippi State Oil & Gas Board*, 604 So. 2d 312, 313 (Miss. 1992), the Mississippi Supreme Court vacated the orders of the State Oil and Gas Board after finding that "[t]he Board has not favored us with minimally adequate findings on these points, much less an explanation [of] how it has evaluated and balanced the competing interests and decided which should rule the day." The supreme court stated that it is "imperative that administrators say at least minimally why they do what they do so someone can see whether it be arbitrary or capricious." *Id.* at 322. Furthermore, no other physician who examined Sherman-Oliver disputed Dr. Millette's diagnosis of spasmodic torticollis and headache.

¶34. Because we find that the Board's decision that Sherman-Oliver was not disabled is

14

not supported by substantial evidence, we reverse and render the circuit court's judgment affirming PERS's order denying non-duty-related disability retirement benefits.

## II. Right to Due Process

¶35. Sherman-Oliver next claims that her right to due process was violated because although Dr. Collipp wrote a report regarding her IME, Dr. Collipp himself did not actually examine her.

¶36. This Court has held that "[a]dministrative proceedings are to be 'conducted in a fair and impartial manner, free from any just suspicion or prejudice, unfairness, fraud, or oppression.'" *Alston v. Miss. Dep't of Emp't Security*, 247 So. 3d 303, 311 (¶29) (Miss. Ct. App. 2017) (quoting *Miss. State Bd. of Health v. Johnson*, 197 Miss. 417, 19 So. 2d 445, 447 (1944)). "[I]t is well established that formal rules of practice, procedure, and evidence are more relaxed in proceedings before administrative agencies than in courts of law; however, 'due process always stands as a constitutionally grounded procedural safety net in administrative hearings.'" *Id*. (quoting *McGowan v. Miss. State Oil & Gas Bd.*, 604 So. 2d 312, 318 (Miss. 1992)). "The minimum due-process requirement an administrative board must afford parties is notice and an opportunity to be heard." *Id*. (citing *Booth v. Miss. Emp't Sec. Comm'n*, 588 So. 2d 422, 428 (Miss. 1991)).

¶37. The record reflects that although Sherman-Oliver sent a letter to PERS alleging that Dr. Collipp did not examine her, Sherman-Oliver's attorney did not object to Dr. Collipp's findings being included in the record, nor did he raise any argument that Dr. Collipp's findings should be disregarded for any reason. Therefore, we find that Sherman-Oliver

15

waived her due process claim. *See Haggerty v. Foster*, 838 So. 2d 948, 954 (¶8) (Miss. 2002) ("In order to preserve an objection for appeal, an attorney must make a contemporaneous objection. . . . Failure to [do so] . . . constitutes a waiver of the argument on appeal."). Furthermore, Sherman-Oliver does not assert that the IME did not take place, nor does she challenge the examination itself. She merely asserts that another doctor in the same office performed the examination. As discussed, Sherman-Oliver waived this issue by not raising an objection.

¶38. **REVERSED AND RENDERED.**

**WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY C. WILSON, J. J. WILSON, P.J., NOT PARTICIPATING.**

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶39. I agree with the majority's determination that Sherman-Oliver waived her due process claim. However, I disagree with the majority's determination that substantial evidence does not support PERS's decision that Sherman-Oliver was not disabled. Furthermore, because the majority's determination may only be reached by reweighing the evidence, I must dissent in part.

¶40. This Court's review of PERS's "disability determinations is limited." *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017) (internal quotation marks omitted). A PERS determination "must remain undisturbed unless [it]: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or

power granted to the agency, or (4) violates the claimant's constitutional rights." *Id*. (quoting *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1284 (¶13) (Miss. 2005)). "'Substantial evidence' has been defined by this Court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Id*. (quoting *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012)).

¶41. This Court has held that "[a] rebuttable presumption exists in favor of PERS's decision, and the claimant has the burden of proving the contrary." *Id*. (quoting *Dearman v. Pub. Emps.' Ret. Sys.*, 205 So. 3d 1100, 1103 (¶10) (Miss. Ct. App. 2016)). Furthermore, this Court is "obligated to afford the agency's determinations of credibility in the fact-finding process substantial deference." *Id*. (quoting *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003)). This Court has stated that it "will not 're-evaluate the evidence' or 'make . . . determination[s] of the trustworthiness of some particular testimony.'" *Id*.

¶42. With respect to Sherman-Oliver's cervical dystonia, the Committee noted the findings of Dr. Millette: Sherman-Oliver was disabled, she should avoid lifting more than twenty pounds, and she should avoid prolonged sedentary work. However, the Committee also noted that Dr. Collipp reached a different conclusion: Sherman-Oliver was physically capable of rarely lifting up to thirty-five pounds, but not fifty pounds, and that she had the functional capacity to perform other aspects of her job. The Committee recalled that Sherman-Oliver had testified that the most she was required to lift was a box of copier paper, which could be lessened by removing the individual reams of paper. The Committee also noted Sherman-

Oliver's employer's willingness to accommodate her. The Committee found that Sherman-Oliver's job was a "desk job," which required "very limited activity." And although Dr. Millette told Sherman-Oliver to avoid prolonged sedentary work, she still spends most of her days sitting and using a computer.

¶43. With respect to Sherman-Oliver's depression and anxiety, the Committee noted Dr. Starr's findings. That is, although Sherman-Oliver had generalized anxiety, major depressive disorder, and preexisting dystonic disorder, she was not psychiatrically disabled. Likewise, Dr. Montgomery found mild-to-moderate symptoms of depression and moderate levels of generalized anxiety. And Dr. Montgomery found that Sherman-Oliver would have only mild difficulty handling the stresses and demands of a workplace environment.

¶44. Sherman-Oliver argues that PERS's decision is not based on "any medical evidence" and "totally ignore[s] the reasoned opinions of Sherman-Oliver's longtime treating neurologist Dr. Terry Millette[.]" However, a review of the record shows that PERS considered the opinions of several doctors, including Dr. Millette. "[W]hen the relevant evidence and opinions of physicians conflict, it is the responsibility of PERS—through its medical board, [the Committee], and board of trustees—to sort through the conflicting evidence and to determine which is more credible and persuasive." *Davidson*, 219 So. 3d at 582 (¶18). This Court does not "second-guess or reevaluate such determinations when, as in this case, they are supported by substantial credible evidence." *Id*.

¶45. The majority finds, "[A]fter reviewing Dr. Collipp's report, we find nothing to contradict Dr. Millette's disability claim . . . ." However, Dr. Collipp's conclusion that

18

Sherman-Oliver was capable of rarely lifting up to thirty-five pounds and had the functional capacity to perform other aspects of her job contradicts any finding that there was no medical evidence or that Sherman-Oliver was disabled under the statute. The majority also finds that "no other physician who examined Sherman-Oliver disputed Dr. Millette's diagnosis of spasmodic torticollis and headache." However, the relevant question is "whether there was substantial evidence to support the finding of PERS that she is capable of returning to her prior employment." *Id*. (internal quotation mark omitted) (quoting *Pub. Emps' Ret. Sys. v. Dean*, 983 So. 2d 335, 340 (¶17) (Miss. Ct. App. 2008)). That evidence exists in the record.

¶46. Sherman-Oliver argues that her employer's certification that she was unable to perform her job was evidence in support of her claim for disability. In 2012, Sherman-Oliver's employer completed a PERS Form 6B titled "Employer's Certification of Job Requirements." Sherman-Oliver's employer indicated that she could not perform her job. However, her employer explained on the form that Sherman-Oliver's "[d]octor stated . . . that [she] could not perform 'all clerical duties due to severe headaches and neck pain due to cervical dystonia.'" It is clear that the employer's opinion was dependent on Dr. Millette's opinion.

¶47. Finally, Sherman-Oliver argues that she was approved for Social Security benefits, which "is further evidence in support of [her] claim of disability." Though it may be considered, "it is well settled that 'PERS is not bound by any finding of the Social Security Administration.'" *Id*. at 583 (¶20) (quoting *Pub. Emps.' Ret. Sys. v. Stamps*, 898 So. 2d 664, 675 (¶35) (Miss. 2005)). Furthermore, the criteria for determining disability under the PERS

19

statute varies greatly from the criteria for Social Security. *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 895 (¶29) (Miss. 2001).

¶48.    Considering our limited standard of review, the deference that must be afforded to the agency, and the substantial evidence that was presented in support of PERS's finding that Sherman-Oliver was not disabled, I believe this Court should affirm.

**C. WILSON, J., JOINS THIS OPINION.**